IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01252-RBJ

WELLONS, INC. an Oregon corporation,

     Plaintiff,

v.

EAGLE VALLEY CLEAN ENERGY, LLC, a Utah limited liability company;
EVERGREEN CLEAN ENERGY CORPORATION, a Colorado corporation;
CLEARWATER VENTURES, LLC, a Utah limited liability company;
UNITED STATES OF AMERICA RURAL UTILITIES SERVICE;
DEAN L. ROSTROM, individually;
KENDRIC B. WAIT, individually;
GEORGE SORENSON, individually;
WILCOX REVOCABLE TRUST; and
SOUTH SEA ENTERPRISES, LLC,

     Defendants.

---

## ORDER

---

     This case is before the Court on similar motions to dismiss plaintiffs' Fifth and Sixth

Claims for Relief under Rules 12(b)(6) and 9(b) filed on behalf of defendants Eagle Valley Clean

Energy, L.L.C., Evergreen Clean Energy Corporation, Dean L. Rostrom and Kendric B. Wait.  In

addition defendant Clearwater Ventures, L.L.C. moves to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  The

motions are denied.

1

## FACTS

On December 21, 2011 Wellons, Inc. agreed to design and build a wood-fired cogeneration facility in Gypsum, Colorado for Eagle Valley Clean Energy, LLC ("EV").  The parties amended their contract on August 8, 2013.  Wellons alleges that EV owes but has not paid the principal balance of $11,799,864.24 due under the amended contract, plus preferred debt interest of $1,214,271.69 (as of September 30, 2014), plus past due interest of $1,185,433.5, plus additional invoiced amounts of $237,147.19.

Wellons' First Claim for Relief is a breach of contract claim against EV.  The Second Claim asserts that Evergreen Clean Energy Corporation ("ECEC") has defaulted on a promissory note for the same amounts except the additional invoiced amounts.  The Fourth Claim asserts unjust enrichment against EV and Clearwater.  The pending motions do not concern those three claims.

The Third Claim seeks to foreclose a mechanic's lien against EV, Clearwater Ventures, LLC, the United States of America Rural Utility Service ("RUS") and "Deutsch," a non-party.  Clearwater moves to dismiss that claim under Rules 12(b)(1) and 12(b)(6).  ECF No. 26.

The Fifth Claim is a fraud claim.  Wellons alleges that its work enabled EV to obtain an $18.5 million federal reimbursement grant under § 1603 of the American Recovery and Reinvestment Act, but rather than paying the debt to Wellons, EV fraudulently transferred the funds to moving defendants ECEC, Clearwater, Dean L. Rostrom and Kendric B. Wait, and to additional defendants George Sorenson, the Wilcox Revocable Trust, and South Sea Enterprises, LLC.  These individuals and entities are said to be insiders of RV as defined in the Uniform Fraudulent Transfer Act.  In its Sixth Claim, Wellons alleges that EV and the several transferees

engaged in a civil conspiracy to remove the grant funds from being available to pay EV's

obligations to Wellons.  Defendants EV, ECEC, Wait and Rostrom have filed motions to dismiss

the Fifth and Sixth Claims under Rule 12(b)(6).  ECF Nos. 15, 21 and 22.

## STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, the Court must accept the

well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor.

However, the facts alleged must be enough to state a claim for relief that is plausible, not merely

speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plausible claim

is a claim that "allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Allegations that are

purely conclusory are not entitled to an assumption of truth.  *Id.* at 681.  However, so long as the

plaintiff offers sufficient factual allegations such that the right to relief is raised above the

speculative level, he has met the threshold pleading standard.  *See, e.g.*, *Twombly*, 550 U.S. at

556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  Allegations of fraud must be

pled with particularity under Rule 9(b).  *See, e.g., Duran v. Clover Club Foods Co.,* 616 F. Supp.

790, 793 (D. Colo. 1985).

The Court can consider matters outside the complaint in resolving a motion to dismiss for

lack of subject matter jurisdiction.  *See, e.g., Davis ex rel. Davis v. United States,* 343 F.3d 1282,

1295 (10th Cir. 2003).

## CONCLUSIONS

**A.  Motions to Dismiss (defendants EV, ECEC, Rostrom and Wait).**

The Motions to dismiss plaintiff's Fifth and Sixth Claims (fraudulent transfer and civil conspiracy) for failure to state a claim on behalf of EV, ECEC, Rostrum and Wait are substantially similar.  To quote the Wait motion, as it was the first one filed, "This is a contract case involving competing claims of breach of contract.  That is it.  It is not a fraud case, and certainly it is not a civil conspiracy case.  It is a contract case.  Period."  ECF No. 15 at 2.

The substance of the motion comes later:  The Complaint "does not set forth a single fact, circumstance or explanation in support of its stark [and even slanderous] allegations."  *Id.* at 4.  Simply put, I disagree.

1.  Fraud Claim.

Under the Uniform Fraudulent Transfer Act as adopted in Colorado, a transfer of funds by a debtor can be found to be intentionally or constructively fraudulent.  The transfer is intentionally fraudulent as to a creditor if it was made with the intent to hinder, delay or defraud the creditor.  C.R.S. § 38-8-105(1)(a).

A transfer is constructively fraudulent if the debtor did not receive "reasonably equivalent value," and its remaining assets were 'unreasonably small' in relation to its business or the debtor intended, believed or should have believed that he would incur debts beyond the debtor's ability to pay them as they became due.  C.R.S. § 38-10-105(b).  Creditors whose claims arose before the transfer have two additional varieties of constructive fraud under C.R.S. § 38-8-106: (1) the debtor did not receive reasonably equivalent value and was either insolvent or became insolvent as a result of the transfer, or (2) the transfer was made to an insider for an antecedent

4

debt at a time when the debtor was insolvent, and the insider had reasonable cause to believe the debtor was insolvent.  "The prohibition of constructive fraud 'operates to avoid transfers motivated by generosity, rather than fraud, reflecting the policy that an insolvent [an entity or a person] should be just to his creditors before he is generous to others.'"  *CB Richard Ellis, Inc. v. CLGP, L.L.C.,* 251 P.2d 523, 529 (Colo. App. 2010) (quoting *In re Bloch,* 207 B.R. 944, 947(D. Colo. 1997)).

Wellons alleges that it is a large creditor of EV; that because of Wellons' work, EV was able to obtain a large government grant that could and should have been used to pay its debt to Wellons.  Instead EV transferred the "vast majority" of the grant funds to other parties, receiving no consideration in exchange and leaving EV insolvent.  *Id.* at ¶¶16-21, 48, 51-52, 54, 57-59.  The Court accepts those factual allegations as true for present purposes.

Wellons also alleges "on information and belief" that ECEC, Clearwater, Rostrom and Wait were recipients of some of the transferred funds.  *Id.* at ¶52.  Defendants contend that allegations made on information and belief cannot meet the pleading standards under Rules 12(b)(6) and 9(b).  However, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant."  *Arista Records, L.L.C. v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).  Whether and to what extent these defendants received grant funds are facts peculiarly within their possession and control.  Similarly, whether each of them is an "insider" as defined at C.R.S. § 38-8-102(8), would be

peculiarly within their possession and control.[1]  Finally, allegations of intent and knowledge may be alleged generally.  Rule 9(b).

The Court concludes that plaintiff has alleged sufficient facts that, taken as true, state a plausible fraudulent transfer claim.

2. Civil Conspiracy.

The elements of a civil conspiracy claim under Colorado law are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result."  *Nelson v. Elway,* 908 P.2d 102, 106 (Colo. 1995).  The moving defendants argue that Wellons "has not sufficiently a single unlawful overt act" against them.  *E.g.,* ECF No. 15 at 8 (defendant Wait's motion).  However, a transfer in violation of the Colorado Uniform Fraudulent Conveyance Act "is a legal wrong which will support a conspiracy claim."  *Double Oak Construction, L.L.C. v. Cornerstone Development International, L.L.C.,* 97 P.3d 140, 146-47 (Colo. App. 2003).  Therefore, for the same reasons that the Court is unwilling to dismiss the fraudulent transfer claim at this stage of the case, it declines to dismiss the civil conspiracy claim.

**B. Motion to Dismiss (defendant Clearwater).**

Clearwater claims that plaintiff did not timely perfect its mechanic's lien.  The relevant statute, C.R.S. § 38-22-110, provides in pertinent part:

---

[1] The Complaint is not devoid of factual allegations potentially relevant to "insider" status.  Plaintiff alleges that one alleged transferee, ECEC, is obliged via a promissory note to pay precisely the same debt as EV, except for the additional invoiced amounts.  ECF No. 1 at ¶28.  Each of the movants is alleged to have the same principal place of business: 4626 North 300 West, Provo, Utah 84604.  *Id.* at ¶¶3-4, 6-7.  I accept those facts as true at this stage.  I also note, for example, that in an affidavit in support of Clearwater's motion to dismiss, defendant Rostrom states that he is the Chairman of ECEC, the sole owner and manager of EV, and the owner of the Gypsum, Colorado project.  ECF No. 26-1 at ¶2.  As such, he would be classified as an insider with respect to EV and ECEC.  *See* C.R.S. § 38-8-102(8)(b)(I)-(III).

> No lien claimed by virtue of this article, as against the owner of the property or as against one primarily liable for the debt upon which the lien is based . . . shall hold the property longer than six months after the last work or labor is performed, or laborers or materials are furnished, or after the completion of the building, structure, or other improvement . . . unless an action has been commenced within that time to enforce the same. . . .

As interpreted by the Colorado Court of Appeals, "under § 38-22-110, a lien claimant must bring a foreclosure action within six months after one of the following dates, *whichever occurs last*: (1) the date of last work performed; (2) the date of last materials furnished; or (3) the date of completion of the building or improvement." *Merrick & Co. v. Estate of Verzuh,* 987 P.2d 950, 953 (Colo. App.) (emphasis added).

Wellons filed the present suit on June 12, 2015.  Thus, unless Wellons provided labor or materials to the property after December 12, 2014, it is barred from enforcing the lien.  The parties' respective briefs discuss two issues related to this statute, one factual, the other procedural.  The factual issue is whether, in Clearwater's words, Wellons provided "substantive" labor or materials to the project within the six-month period.  The procedural issue is whether the matter should be deemed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6).  The procedural peg is potentially relevant to how and when the factual dispute is resolved.

    1. <u>Facts</u>.

Wellons alleged in its Complaint that as of the filing of the complaint it "continues to provide labor and materials at the Property," ECF No. 1 at ¶31.  Clearwater responds that Plaintiff has not provided <u>any</u> *substantive* labor or material to the Property since December 25, 2013."  ECF No. 26 at 2 (first emphasis in original; second emphasis added).

Clearwater submits an affidavit of defendant Rostrom (as indicated earlier, he is the Chairman of ECEC, the sole owner of EV, and the owner of the project).  ECF No. 26-1.  He reports that Wellons admitted that it completed the project well before December 12, 2014.  He points to a June 27, 2014 email to him from Wellons' President, Martin Nye, in which Mr. Nye says, "I completely disagree with you regarding final completion.  We clearly met the final completion requirements at the end of the thirty day capacity test."  *Id.* at 95.  Mr. Nye added that many of the items on the punch list of items still to be completed "are more nuisance items rather than ones of the very serious nature you try to express."  *Id.*  Further, in an October 27, 2014 letter, Mr. Nye advises Mr. Rostrom that Wellons "takes issue with the contention that it is 'in material default of the [contract]," again stating that final completion was timely achieved, and that "[a]ll that remains are a few minor punch list items."  *Id.* at 97.  He asserts that if EV contends that final completion was not achieved to its satisfaction, then EV is not acting with "reasonable discretion" as required by the contract, and he accuses EV of being in default of its payment obligation.  *Id.*

Wellons responds with an affidavit of its Vice President of Operations, Ken Kinsley, and 18 other documents.  Mr. Kinsley states, "[i]n the fall of 2014 Wellons and EV were mired in a dispute over construction items which EV felt required repair or replacement and which Wellons felt required some work."  ECF No. 31-19 at ¶4.  A plant shutdown was necessary for Wellons to be able to address some of these matters.  *Id.* at ¶5.  After the plant was shut down on December 13, 2014 due to a fire, a Wellons subcontractor accessed the site on December 23, 2014 to install an additional alarm horn as requested by EV.  *Id.* at ¶¶6, 7.  From January 5 to 7, 2015 another Wellons subcontractor was on site making repairs associated with turbine speed sensor signals.

*Id.* at ¶8.  On January 29 and 30, 2015 Wellons' field supervisor Sam Wright was on site making repairs to the feed water distribution header, which was "critical and necessary" to ensure reliable operation of the plant.  *Id.* at ¶9.  Mr. Wright also made repairs to the steel water tubing for the condenser circulating water pumps.  *Id.*  From March 13 through 15, 2015 a Wellons subcontractor was on site to complete the repairs associated with the turbine speed signals and to re-route turbine-generator wiring.  *Id.* at ¶¶11, 12.

Clearwater dismisses these work items as trivial and therefore irrelevant.  It cites *Richter Plumbing & Heating v. Rademacher,* 729 P.2d 1009 (Colo. App. 1986) which held that a lien claimant could not extend a four-month filing period under C.R.S. § 38-22-109(5) "by doing work related to a 'trivial imperfection in or omission from' work or construction performed on a project deemed completed."  *Id.* at 1013.[2]  *See also Kaibab Lumber Co. v. Osburne,* 464 P.2d 294, 296 (Colo. 1970) (trial court's finding that repairs were to correct trivial imperfections or omissions -- 'fixing of bugs' -- was supported by sufficient evidence).  Assuming without deciding that a similar "trivial work" exception applies to C.R.S. § 38-22-110, it is only fair to note that *Richter* also states, "However, all repairs and 'shakedown' work following the construction of a house need not precede 'completion.'  'Determination of completion date is within the province of the trier of fact and will not be overturned on appeal where evidence supports its finding.'"  *Id.*  (citations omitted).  Wellons also notes that an action on a lien has

---

[2] C.R.S. § 38-22-109(7) states: "No trivial imperfection in or omission from the said work on in the construction of any building, improvement, or structure, or the alteration, addition to, or repair thereof, shall be deemed a lack of completion, nor shall such imperfection or omission prevent the filing of any lien statement or filing of or giving notice, nor postpone the running of any time limit with which any lien statement shall be filed . . . ."  There is no similar provision in C.R.S. § 38-22-110.

been held to be timely where "substantial follow-up and repair work" occurred within the six-month period. *Adams v. Colorado Seal & Stripe, Inc.,* 702 P.2d 765, 767 (Colo. App. 1985).

There is a certain amount of hypocrisy on both sides. In 2014 Clearwater was taking the positon that the project had not achieved final completion; that significant work remained to be done; and that it therefore was not obligated to complete payment for the project. Wellons was taking the position that final completion had been achieved, and that only minor or nuisance items remained on a punch list. Their positions are now essentially the reverse of what they were saying in 2014, presumably fueled by the parties' positions on the timeliness of the mechanics lien claim. At bottom, however, one thing is evident: there is a genuine dispute of material fact as to whether labor was performed or materials were furnished after December 12, 2014 that were not trivial but were necessary and important to the final completion of the project.

2. Procedure.

Clearwater argues that the six-month time period is "jurisdictional," such that the Court can (and should) decide it now under Rule 12(b)(1). Wellons counters that the six-month deadline is an element of its claim, and therefore, the proper procedure is a motion to dismiss for failure to state a claim under Rule 12(b)(6). Both sides recognize that resolution of the fact issues depends on matters outside the pleadings. Therefore, if Clearwater's motion is deemed a motion to dismiss for failure to state a claim, it must be treated as a motion for summary judgment

Determining whether a statutory requirement is "jurisdictional" or an element of plaintiff's claim is not an easy task. Wellons relies on the Supreme Court's treatment of the subject in *Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006). The issue there arose from Title VII's

10

limitation of covered employers to those with 15 or more employees.  After a jury found that the

employer had discriminated against the plaintiff on the basis of gender and awarded damages,

the employer for the first time asserted that it did not have 15 employees.  The district court

agreed that the defendant did not have 15 or more employees and, finding the limitation to be

"jurisdictional," reluctantly dismissed the case.  The Supreme Court disagreed.  Contrasting the

15-employee requirement provided in the statute's definition of "employer" with the statute's

jurisdiction-conferring provision that federal district courts "shall have jurisdiction of actions

brought under this subchapter", the Court held:

> If the Legislature clearly states that a threshold limitation on a statute's scope
> shall count as jurisdictional, then courts and litigants will be duly instructed and
> will not be left to wrestle with the issue.  But when Congress does not rank a
> statutory limitation on coverage as jurisdictional, courts should treat the
> restriction as nonjurisdictional in character.  Applying that readily administrable
> bright line to this case, we hold that the threshold number of employees for
> application of Title VII is an element of a plaintiff's claim for relief, not a
> jurisdictional issue.

*Id.* at 515-16.

But while the clear intent of the legislature serves as a bright line, it is not necessarily

easy to determine what the clear intent was.  For example, the Court in *Arbaugh* noted that

although it had "occasionally described a nonextendable time limit as 'mandatory and

jurisdictional,' "in recent decisions, we have clarified that time prescriptions, however emphatic,

'are not properly typed' 'jurisdictional.'"  *Id.* at 1242.  The Court repeated this in *Sebelius v.*

*Auburn Regional Medical Center,* 133 S. Ct. 817 (2013): "[W]e have repeatedly held that filing

deadlines ordinarily are not jurisdictional; indeed, we have described them as 'quintessential

claim-processing rules.'".  *Id.* at 825.  Nevertheless, in *Barnes v. United States,* 776 F.3d 1134

(10th Cir. 2015), the court held that the time limit in the Federal Tort Claims Act ("A tort claim

against the United States shall be forever barred unless it is presented in writing to the

appropriate Federal agency . . . within six months after the date of mailing," 28 U.S.C. §

2401(b)), is jurisdictional.  *Id.* at 1147-48.  But in *United States v. Madsen,* 614 F.App'x 944

(10th Cir. 2015) (unpublished), the court, in an opinion authored by the same judge who

authored *Barnes,* held that the six-year statute of limitations for bringing a tax evasion claim, 26

U.S.C. § 6551(2), is not jurisdictional and was waived by defendant's failure to assert it at trial.

*Id.* at 951-52.

Unlike these several cases which examine whether provisions of federal statutes are

"jurisdictional," we are dealing here with a Colorado state statute.  Neither party cites any case

that has expressly determined whether the six-month time limit of C.R.S. §38-22-110 is

jurisdictional.  My responsibility, therefore, is to attempt to predict how the Colorado Supreme

Court would decide the issue.  No Colorado case that I have found provides strong evidence one

way or the other.  *See, e.g., King v. W.R. Hall Transportation and Storage Co.,* 641 P.2d 916,

920 (Colo. 1982) (the six-month time limitation has been strictly applied; the Court rejected

plaintiff's equitable tolling argument because of the absence of a tolling provision in the statute

and the policy reasons behind the short statute of limitations).  *See also Rogers Concrete, Inc. v.

Jude Contractors,* 550 P.2d 892, 893 (Colo. App. 1976) (a claim of party who failed to sue

within six months was extinguished; a party who did sue within six months may not amend to

join additional defendants after six months).  *But see McIntire & Quirios of Colorado, Inc. v.

Westinghouse Credit Corp.,* 576 P.2d 1026, (Colo. App. 1978) (describing the six month limit of

C.R.S. 38-22-10 as a defense based on a statute of limitations that must be raised by responsive

pleading).

In its reply brief, Clearwater informs me that the "definitive statement of the law" was rendered in *Fleshman v. Whiteside,* 34 P.2d 648 (Or. 1934). Plaintiff filed notices of mechanics lien claims on September 19, 1931. He filed a suit to foreclose the liens on August 31, 1932. The applicable Oregon statute provided that a lien does not bind property unless suit to enforce the lien is filed within six months. Plaintiff argued that defendant waived the benefit of the statute by not raising it until the trial. Citing a 1928 treatise, the Court held that

> it is the rule in most jurisdictions that this provision, as well as some others in somewhat different language, is not a statute of limitations, which is waived if not pleaded, but a statute limiting the duration of the lien. The remedy forms a part of the right and must be pursued with the time prescribed, or else both are lost. If an action is not brought within the time limited, the court is without jurisdiction to decree a foreclosure, though it is not deprived of power to render a valid judgment.

*Id.* at 78.

I do not find *Fleshman* to be definitive. It is a different jurisdiction construing a different statute. More importantly, a great deal of water has flowed over the dam since 1938, including the United States Supreme Court's comments on whether filing deadlines are jurisdictional.

I am inclined to believe that the Colorado Supreme Court would probably find the six-month deadline to be an element of the claim, taking a cue from the more recent United States Supreme Court decisions. In the present case it does not make a great deal of difference. Wellons is not proposing an equitable extension or exception to the deadline. Its position is that it did provide labor and materials within the six-month window. In any event, I do not have to reach or decide that thorny issue today. There are genuine disputes of fact as to when the last (non-trivial) work was performed, when the last (non-trivial) materials were furnished, and when the project was completed. The case is not appropriate for summary disposition. Even if the

13

case were decided by the Court under Rule 12(b)(1), I would not resolve the fact disputes on the present record.

## ORDER

The motions to dismiss, ECF Nos. 15, 21, 22 and 26, are DENIED

DATED this 24th day of November, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge