```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 15-cv-01252-RBJ
 3  consolidated with 15-cv-02055-RBJ

 4

 5  WELLONS, INC.,

 6       Plaintiff,

 7  vs.

 8  EAGLE VALLEY CLEAN ENERGY, LLC, et al.,

 9       Defendants.

10  _____

11                    REPORTER'S TRANSCRIPT
                  Telephone Discovery Conference
12  _____

13              Proceedings before the HONORABLE R. BROOKE

14  JACKSON, Judge, United States District Court for the District

15  of Colorado, commencing at 2:08 p.m., on the 30th of September,

16  2016, in Chambers A937, Alfred A. Arraj United States

17  Courthouse, Denver, Colorado.

18

19

20

21

22

23

24  Proceeding Reported by Mechanical Stenography, Transcription
          Produced via Computer by Kara Spitler, RMR, CRR,
25       901 19th Street, Denver, CO, 80294, (303) 623-3080
```

1                          APPEARANCES

2              STEPHEN LEATHAM, Heurlin Potter Jahn Leatham Holtmann

3     & Stoker, 211 E. McLoughlin Boulevard, Suite 100, Vancouver, WA

4     98663; MICHAEL FRAZIER, Campbell, Latiolais & Averbach, LLC,

5     825 Logan Street, Denver, CO 80203-3114, for plaintiff.

6              SCOTT GREENE, Bryan Cave LLP, 1201 West Peachtree

7     Street, N.W., 14th Floor, Atlanta, GA 30309-3488; SARAH BAKER,

8     P.O. Box 425, Edwards, CO 81632, for defendants.

9                        P R O C E E D I N G S

10       (In chambers at 2:08 p.m.)

11             THE COURT:  Hello.

12             UNIDENTIFIED INDIVIDUAL:  Good afternoon.

13             THE COURT:  All right, this is the Wellons case,

14    15-cv-1252.  Apparently there's another discovery dispute that

15    the parties cannot resolve.

16             Let me start by getting your appearances.

17             Who is going to be appearing and speaking for the

18    plaintiff?

19             MR. LEATHAM:  Steve Leatham, Your Honor.

20             MR. FRAZIER:  Mike Frazier, also, Your Honor.

21             THE COURT:  Who's speaking for the defendant?

22             MR. GREENE:  This is Scott Greene, Your Honor.  I'll

23    be speaking for the defendants, but I'm also joined on the call

24    by Sarah Baker and by our client, Dean Rostrom.

25             THE COURT:  What's the problem today?

1    MR. LEATHAM:  We have a discrete issue, Your Honor,

2    that we've been unable to resolve and we need to get a ruling

3    on it.  The issue has to do with whether we can provide

4    unredacted documents that we receive from Holy Cross Energy to

5    our expert witnesses, and that's the question for the Court

6    today.

7        To advise you where this came from, we issued a

8    subpoena to Holy Cross back in April.  We reduced the scope of

9    the documents requested.  The defendants filed a motion to

10   quash the subpoena, and in your courtroom, that motion was

11   denied as moot, because the parties were to work together to

12   resolve any issues.  We're now five months after that subpoena

13   was issued and still don't have unfettered access or ability to

14   use these documents.  The concern from the defendants' point of

15   view is potential competition.

16       THE COURT:  I'll hear from the defendants.  I don't

17   need to have you tell me what their position is.  Your

18   position -- your position has to do with these documents from

19   Holy Cross Industries.  Somebody has redacted parts of them.

20   So what?  Why does your expert need unredacted copies?

21       MR. LEATHAM:  Well, the only thing that's been

22   redacted is two things.  The identity of the suppliers who have

23   sold fuel to Eagle Valley and on the documents, the headings,

24   the headings have been redacted because it would potentially

25   lead to an ability to identify the suppliers.  And our

1   experts --

2           THE COURT:  You said there were two things that were

3   redacted.  What were the other ones?

4           MR. LEATHAM:  The headings and the fuel suppliers'

5   identities.

6           MR. GREENE:  Those are one and the same, Your Honor.

7           THE COURT:  Who is this expert?

8           MR. LEATHAM:  We have approximately eight experts.

9   With the concern being competition, we wound up signing a

10  noncompete agreement.  That's the first step we took to try to

11  resolve this, Wellons signed this, Wellons group, Wellons'

12  general counsel, CEO, general counsel's former (unintelligible)

13  they've all signed it.  The issue now is that the request has

14  been made that our experts sign a noncompetition agreement, and

15  I've never come across anything like that in 30 years of doing

16  this.

17          THE COURT:  Well, whether you have or not, do the

18  experts object to that?

19          MR. LEATHAM:  I haven't even asked them.  They're not

20  even in a position to compete.

21          THE COURT:  Have the experts said that they need the

22  specific identities in order to form an opinion?  I don't

23  understand why they would.

24          MR. LEATHAM:  Yeah, because, because Eagle Valley

25  obtains most all of its, most all of its fuel from defendant

1    (unintelligible) and the same people that control Eagle Valley

2    and (unintelligible) provides the fuel at cost with no markup.

3    We need to be able to be in touch with these suppliers to find

4    out about the other two (unintelligible) how does it compare as

5    far as cost, quality, whether it meets specifications,

6    quantities supplied, whether they can supply additional fuel,

7    and maybe different prices (unintelligible).

8         As it stands now, the information we have just comes

9    from Eagle Valley, and the experts are going to want to verify

10   some of the information because it's self-reported information.

11   And without being able to cross-check with the suppliers, then

12   we just have to take it at face value, and we shouldn't have to

13   do that.  We have a protective agreement in place that the

14   experts will sign off on that says stipulated protective order

15   in the works that will also apply to this information, and

16   there's just no basis for redacted supplier names.  It's not

17   proprietary.  It's not a trade secret, they're out in public,

18   there's no privilege.

19        And we don't think it should be dictated to our

20   experts as to what they can and can't review, the information

21   is protected, there's zero risk of competition from any of

22   these experts and they're bound by the protective order and so

23   all we want to do is give our experts unredacted documents; and

24   with the headers redacted, those documents are meaningless

25   (unintelligible).

1          THE COURT:  Why do you have eight experts on the same

2     topic?

3          MR. LEATHAM:  It's not on the same topic.  It's on --

4     there are a lot of issues in this case; they're each on

5     different topics.

6          THE COURT:  Well, which experts need to know the

7     identity of the suppliers?

8          MR. LEATHAM:  Certainly damages experts.

9          THE COURT:  Why?  I don't get it.

10          MR. LEATHAM:  Because the fuel costs are the primary

11     factor that drives profit and loss at Eagle Valley and every

12     other facility like this, and so (unintelligible) in connection

13     with the lost-profit claim.

14          THE COURT:  So you need the fuel-cost information, but

15     why do you need the identity of the supplier?

16          MR. LEATHAM:  Because as I said, we otherwise have to

17     accept what Eagle Valley tells us is true without being able to

18     confirm it's true.

19          THE COURT:  Okay.

20          Mr. Greene, what's your problem?

21          MR. GREENE:  Your Honor, first of all, this is not

22     accepting anything from Eagle Valley.  The subpoena goes to

23     Holy Cross and the documents are being produced by Holy Cross.

24     We've given them exactly -- through Holy Cross, we've given

25     them exactly what was covered by the subpoena which was what

1    was paid by Eagle Valley for fuel.  The only redactions that we

2    have requested to be made have to do with the name of

3    suppliers.

4           We have eight experts here, unknown, unidentified who

5    now Mr. Leatham said needs to get in touch with all these

6    suppliers and talk to them and we're now far beyond the scope

7    of the subpoena.  Frankly, we don't see why they have to talk

8    to the suppliers.  The suppliers are competitors.  They are

9    sawmills, they are grinding companies.

10          These eight experts, who knows who they are.  Are they

11   competitors, could they be competitors, could they be

12   competitors, Mr. Leatham and his client are unwilling to have

13   them sign on to any no-competition agreement.  So we are

14   concerned.  We thought we had accomplished what Wellons was

15   looking for, giving them all the information of what was paid

16   by Eagle Valley to Holy Cross, all the information of what we

17   paid for our fuel supplies.

18          I'm not sure why counsel suggest that the redactions

19   make it unintelligible.  The redactions just remove the names

20   of suppliers.  All the data related to the costs are there.

21   They can calculate moisture content, which is what they

22   represented to the Court they were attempting to do.  They can

23   test our costs related to the damages that we'll be seeking

24   here, which is also what they represented to the Court.

25          But there's no need to go into how many of these

1   experts need to talk to the suppliers, who are they, what are

2   they going to ask the suppliers.  Your Honor, this is not

3   intended to be paranoia on the part of our clients.  You'll

4   recall that Your Honor authorized us to obtain letters between

5   counsel and the Town of Gypsum that had been withheld

6   previously.  Well, we now have those and lo and behold, they're

7   very interesting in terms of the representations by counsel for

8   Wellons about our company.  We think they're disparaging and we

9   think they paint an unfair picture.  We don't want any of that,

10  because we don't think any of that has any bearing on what the

11  jury ultimately will be deciding here.

12         So we are attempting, as best we can, to provide the

13  information that they asked for in the subpoena.  And all we've

14  asked is that please remove the names.  We've even come up with

15  other solutions.  If the redactions aren't successful, how

16  about -- aren't acceptable, how about signing on to the

17  noncompete.  Well, as you heard, Your Honor, that's not

18  acceptable to them.

19         We can offer, for example, if they need to know the

20  type of supplier, is it a sawmill, is it controlled in any

21  sense by Eagle Valley, is it an in-woods grinder, we can

22  identify that.  We're willing to provide by category or by

23  whatever information they feel they now need, but we don't want

24  to give them the actual names of these dozen or more different

25  companies that are supplying fuel.

1          And lastly, I'll say, Your Honor, as to West Range,

2   they have the ability to take West Range's deposition, and in

3   fact, I believe they've already taken West Range's deposition.

4   So any information related to West Range is certainly open to

5   discovery.  We've not in any way attempted to stop that.

6          THE COURT:  So you say, Mr. Greene, that if they had

7   had their experts sign on to the noncompete agreement, you

8   would have given them this information.  But they wouldn't

9   accept that.

10          MR. GREENE:  That's correct.

11          THE COURT:  Yeah.

12          MR. GREENE:  Correct.

13          THE COURT:  Okay.

14          I think the plaintiff's position is unreasonable.  The

15   motion from the plaintiff is denied.

16          Is there anything else?

17          MR. GREENE:  That's all from our standpoint.

18          MR. LEATHAM:  No.

19          THE COURT:  Okay.  Have a good weekend, gentlemen.

20          MR. GREENE:  Thank you, Your Honor.

21      (Recess at 2:19 p.m.)

22                    REPORTER'S CERTIFICATE

23          I certify that the foregoing is a correct transcript

24   from the record of proceedings in the above-entitled matter.

25   Dated at Denver, Colorado, this 14th day of November, 2016.

1

2                                        s/Kara Spitler_____
3                                              Kara Spitler

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25