IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-01252-RBJ (consolidated)

WELLONS, INC., an Oregon corporation,

    Plaintiff,

v.

EAGLE VALLEY CLEAN ENERGY, LLC, a Utah limited liability company,
EVERGREEN CLEAN ENERGY CORPORATION, a Colorado corporation,
CLEARWATER VENTURES, LLC, a Utah limited liability company,
DEAN L. ROSTROM, individually,
KENDRIC B. WAIT, individually,
WESTERN RESOURCES, LLC, a Utah limited liability company,
COLORADO FORESTRY FUNDING, LLC, a Delaware limited liability company, and
WEST RANGE FOREST PRODUCTS, LLC, a Colorado limited liability company,

    Defendants.

---

EAGLE VALLEY CLEAN ENERGY, LLC,
EVERGREEN CLEAN ENERGY CORPORATION, and
CLEARWATER VENTURES, LLC,

    Counterclaimants,

v.

WELLONS, INC.,

    Counterclaim defendant.

---

EAGLE VALLEY CLEAN ENERGY, LLC,
EVERGREEN CLEAN ENERGY CORPORATION, and
CLEARWATER VENTURES, LLC,

    Third-party plaintiffs,

v.

WELLONS GROUP, INC., and
MARTIN NYE,

    Third-party defendants.

---

Civil Action No. 15-cv-02055-RBJ

GCUBE INSURANCE SERVICES, INC., a California corporation,

    Plaintiff,

v.

WELLONS, INC., an Oregon corporation,

    Defendant.

---

### ORDER ON MOTION FOR NEW TRIAL

---

On June 5, 2007 the jury rendered its verdicts in case no. 15-cv-1252-RBJ in favor of the plaintiff, Wellons, Inc., on separate counts of breach of contract against defendants Eagle Valley Clean Energy, LLC and Evergreen Clean Energy Corporation. Specifically, the jury found that Eagle Valley had breached a construction contract called the EPC Contract, and it awarded damages to Wellons in the amount of $10,840,000. This was the unpaid portion of the contract price and was a stipulated number. The jury found that Evergreen Clean Energy had breached its obligations under a subordinated promissory note, and it awarded damages to Wellons of the same $10,840,000. The jury found in favor of the two defendants (and entities related to them) on plaintiff's fraudulent transfer claims. Finally, the jury found against Eagle Valley on its two

counterclaims, one asserting breach of the EPC Contract by Wellons, and the other asserting negligence by Wellons. *See* ECF Nos. 367 and 368 (unredacted), 369 and 370 (redacted).

The Court entered its Final Judgment on July 24, 2017. ECF No. 382. On August 21, 2017 Eagle Valley and Evergreen Clean Energy filed a motion asking the Court to grant Eagle Valley a new trial on its breach of contract counterclaim against plaintiff Wellons. ECF No. 408. Before plaintiff responded the same defendants filed a notice of appeal. ECF No. 413. On September 7, 2017 an Order was issued by the Clerk of the United States Court of Appeals for the Tenth Circuit stating that the appeal would be abated until the district court disposes of the motion for a new trial. ECF No. 425.[1]

In the motion for new trial defendants argue that (1) the verdict was against the weight of the evidence, and (2) the verdict was precipitated by several prejudicial errors by the Court. I address those arguments in turn.

**A. <u>Weight of the Evidence</u>.**

In the EPC Contract Wellons agreed to construct a biomass electricity generation plant in Gypsum, Colorado in exchange for an agreed price. Wellons built the plant, but Eagle Valley refused to pay $10,840,000 which was the remaining unpaid portion of the contract price. The jury found that Eagle Valley, not Wellons, breached the contract and awarded damages to Wellons in the amount of $10,840,000. Accordingly, while the pending motion seeks a new trial on Eagle Valley's counterclaim for breach of the EPC Contract, it presumably would require a

---

[1] The Clerk's order stated that that the motion for a new trial had been fully briefed but not yet decided. Actually, plaintiff had not yet responded to the motion for a new trial, nor, of course had defendants yet replied. Plaintiff responded on September 11, 2017. ECF No. 427. The motion became ripe for decision by the district court upon defendants' filing of their reply on September 25, 2017. ECF No. 447.

3

new trial as well on Wellons' breach of contract claim against Eagle Valley under the same contract.

Defendants argue that the verdict was "overwhelmingly" against the weight of the evidence. ECF No 408 at 4-6. I disagree. First, contrary to defendants' argument that there was no evidence that Wellons achieved substantial completion, there was substantial, albeit disputed, evidence that "Final Completion" (a condition of defendants' obtaining certain financing, which they did obtain) was achieved. Wellons acknowledged that there were various relatively small tasks, which Wellons called "punch list" items, remaining to be done. But there was evidence that defendants interfered with Wellons' ability to complete those items, including by excluding Wellons from the site. As Wellons points out in its response, not only was there evidence that final completion was achieved, but there was evidence that Wellons delivered a plant that functions well and produces more electricity than was promised. *See* ECF No. 427 at 3-4.[2]

Defendants identify a list of specifics where, they contend, Wellons breached the EPC Contract:

- the boiler's failure to achieve a 900 degree operating temperature, which defendants attribute at least in part to the installation of an undersized boiler system pipe

- "CEMA" is the prevailing industry standard for fuel conveyer design and construction, but Wellons did not meet that standard

---

[2] In their reply brief defendants criticize Wellons for failing to include citations to the record in its response brief. ECF No. 447 at 1. I have checked with the court reporter who confirmed that neither side has ordered a transcript of the trial. Defendants arranged with the reporter for real time transcription during the trial, and they are citing her rough notes and unofficial transcript. Wellons did not order real time transcription and, since defendants apparently haven't shared their copy, Wellons does not have the rough transcript to cite. That does not mean that its description of the evidence is wrong. It appeared to me that the lawyers, like the Court and the jurors, took copious notes during the trial.

- Wellons did not "resolve" eight punch list items

ECF No. 408 at 2-4.

I agree that defendants presented evidence concerning alleged deficiencies. But as pointed out in Wellons response, defendants' evidence was not the only evidence on these items. For example,

- Wellons presented evidence that Eagle Valley's use of inappropriate fuel, i.e., fuel containing high moisture or ash, was the likely cause of the difficulty in achieving the 900 degree boiler temperature
- Wellons presented evidence that CEMA is not a building code but a guideline which Wellons uses when it is appropriate for the particular plant
- Wellons presented evidence that the punch list items were relatively minor (and Wellons wasn't permitted to complete the items on its punch list)
- Wellons presented evidence that, notwithstanding the alleged deficiencies, and Eagle Valley's interference and use of inappropriate fuel, the plant performs well and exceeds the parties' expectations in terms of the electricity it generates

ECF No. 427 at 3-4, 6-7.

In short, this was a hotly disputed and heavily litigated case. The jury was instructed (without objection) that one element of Wellons' breach of contract claim that Wellons had to prove was that Wellons "did what the contract required it to do, or that it was excused from performing its contract obligations." ECF No. 365, Instruction No. 9, ¶(2). *See also* Instruction No. 10 (concerning whether Wellons committed a material breach of the EPC Contract). Likewise, the jury was properly instructed (without objection) on the elements of Eagle Valley's

breach of contract counterclaim. *See* Instruction No. 20. *See also* Instruction No. 9 (breach of contract generally). The Court found that there was evidence in the trial record on which the jury could resolve the breach of the EPC Contract claims either way.

Moreover, the legal argument defendants now advance for the first time in their reply brief, i.e., that even an immaterial breach of a contract is sufficient to support an award of damages, is contrary to the jury instructions that were given in this case without objection from the defendants. At bottom, the Court now expressly finds that there was substantial evidence from which a rational jury could find, as it did find, that Wellons sufficiently performed (and as to the remaining items stood ready to perform) its obligations to earn the final amount owed under the EPC Contract.

**B. Errors of Law.**

Defendants identify four "prejudicial errors" which they attribute to the Court.

1. Bifurcation.

Wellons had two primary claims: first, breach of contract, namely, defendants' refusal to pay monies owed under the EPC Contract and the promissory note; and second, fraudulent transfer of funds from defendants to related individuals and entities in order to hinder or defeat Wellons' ability to collect a judgment against them if a judgment were obtained. As indicated, the jury rejected the fraudulent transfer claim.

On repeated occasions in pre-trial motions and hearings the parties debated whether the fraudulent transfer claims should be bifurcated for a separate trial. Eagle Valley and Evergreen Clean Energy argued for bifurcation, indicating among other things that a joint trial would be unnecessarily long and complicated, and that the possible taint of the claim of fraudulent transfer

might unfairly prejudice the jury against them on the parties' respective breach of contract claims. Wellons opposed bifurcation, arguing that it had serious concerns that defendants' allegedly fraudulent activity would render a verdict on its breach of contract claims a pyrrhic victory, and that it wanted to resolve all claims between and among the parties in one setting rather than incurring the time and expense to prepare and try a second case where much of the same evidence would have to be repeated. Wellons' lead counsel admitted that he also thought that putting on his fraudulent transfer evidence might give Wellons some advantage on its contract claims.

    The Court considered two different approaches to a possible bifurcation, namely, having the same jury return and hear a second phase on the fraudulent transfer claims or setting the fraudulent transfer claims for a separate trial before a new jury, contingent of course on Wellons' prevailing on its breach of contract claims in the first phase or first trial. The Court also explored alternatives that might moot Wellons' concerns about collectability of a verdict. One alternative discussed was to obtain an independent appraisal of the plant which was defendants' largest asset. Another alternative was for the defendants to provide access to banking and accounting records so that Wellons' accountants could satisfy themselves regarding where any transferred funds had gone and whether, as defendants contended, they were fully capable of satisfying a judgment. While defendants seemed to endorse the second alternative, this possible resolution broke down in continual bickering between the parties as to whether Eagle Valley and Evergreen Clean Energy were actually complying with their undertakings to provide the banking and accounting information.

Ultimately, the Court declined defendants' request for bifurcation. Defendants now speculate that trying the fraudulent transfer claims with the contract claims might have prejudiced the jurors against them on the contract claims. However, that speculation rings hollow in light of the jury's rejection of Wellons' fraudulent transfer claims entirely.

A court "may" order a separate trial on one or separate issues to avoid prejudice or to expedite and economize. Fed. R. Civ. P. 42(b). There is no plausible argument that defendants were prejudiced. Moreover, I do not find that separate trials would have achieved expedition or economy. On the contrary, I agree with plaintiffs that a separate trial on the fraudulent transfer claims inevitably would have required repetition of a substantial part of the evidence presented at considerable expense to the parties and inconvenience to witnesses. The Court remains satisfied with its exercise of discretion on this issue.

2. <u>Kendrick Wait testimony</u>.

Defendants suggest that the jury should have been permitted to find that Wellons indemnified Eagle Valley against Wellons' breach of the EPC Contract. Since the jury found that Wellons did not breach the EPC Contract, this argument too rings hollow. Moreover, defendants overlook the two reasons the Court struck Mr. Wait's testimony on this indemnification theory. First, the Court interpreted the indemnification provision to mean that Wellons indemnified Eagle Valley against claims by third parties arising from Wellons actions, not indemnification against Wellons' breach of the EPC Contract, which was fully covered by the parties' respective breach of contract claims under that contract. Second, Mr. Wait's opinions on this subject were improper opinion testimony (and seemingly the result of prompting and coaching by others). It is pure speculation to suggest that the Court's instruction to the jury

8

to disregard the stricken testimony damaged Mr. Wait's credibility on other matters, but to any extent it could have, it was nevertheless a necessary and appropriate instruction. Defendants created their own problem by using Mr. Wait as the vehicle to try to support their misguided theory.

      3. <u>Wellons' Closing Argument</u>.

Defendants contend that Wellons' counsel made statements in his closing argument that were not supported by the evidence. Notably, however, defendants' counsel did not contemporaneously object to any of the alleged transgressions. Moreover, I note that the first two of the alleged misstatements were made in plaintiff counsel's opening summation. Defendants' counsel had the opportunity in his closing to correct the record on those misstatements, if indeed they were misstatements. The other examples come from plaintiff counsel's rebuttal speech. But, because Eagle Valley was the "plaintiff" on its counterclaim, the Court offered defendants' counsel an opportunity to make a rebuttal to plaintiff's rebuttal. He elected not to do so. Again, it would have been a chance to correct the alleged overreaching in plaintiff's rebuttal had he wished to do so.

Therefore, defendants now fall back on an assertion of "plain error," i.e., that plaintiff counsel's misstatements were so obvious and egregious that the Court should have *sua sponte* interrupted the arguments and stricken the remarks. That ignores the realities of the trial. For one thing, judges (or at least this one) generally have no way of knowing what the absence of an objection means. The defendants were represented by a team of very experienced, capable and aggressive lawyers. The absence of an objection could mean that trial counsel did not believe that an objection was proper. It could mean that counsel thought it was an unimportant matter.

9

It could mean that counsel thought that there might be a tactical advantage in letting plaintiff's counsel misstate evidence in front of an alert jury that took copious notes and asked incisive questions. Of course, it could mean that counsel was asleep at the wheel. But not knowing what the reasons might be, a *sua sponte* interruption of a lawyer's closing when the opposing party is represented by experienced counsel who is not objecting is not something that a trial judge (or at least this one) does lightly.

Second, a trial judge (or at least this one) can't have perfect and instantaneous recall of all of the evidence presented in a lengthy and complex civil trial so as to be able immediately to jump in even though no objection has been made. It is a far different situation when, after trial, the lawyers on the losing side have all time they need to comb through what in this instance is a rough transcript searching for something to attack.

Incidentally, I am not convinced, even in hindsight, that the eleven statements listed in defendants' motion were improper or, in any event, that any of them changed the result of the trial. I agree with Wellons that, at a minimum, items D, I, J and K had support in the evidence. I agree that counsel obviously misspoke with respect to item A. Wellons' explanations of the statements in items B, C and H are plausible, if a bit obscure. I'm not sure I even understand what item E means, but the jury was instructed on the applicable law. I likewise do not understand defendants' point as to item G. As for item F, this isn't a complaint about the closing argument; rather, it's a complaint that certain testimony of expert witness Cioffi was not properly disclosed. The same argument was made when Ms. Cioffi was on the stand. I did limit her testimony somewhat. But I found then, and find now, that the testimony that she was permitted

to give was not outside the scope of her report. Having considered all eleven of the items raised by defendants, I find that if there was error – and I believe there was not – it was harmless.

    4. <u>Erroneous Verdict Form</u>.

Defendants complain that the verdict form referred the jury back to Instruction No. 9 (which set forth the basic elements of a breach of contract claim) in the section of the verdict concerning Wellons' contract claim against Eagle Valley, but it referred the jury back only to Instruction No. 20 rather than both 9 and 20 in the section concerning Eagle Valley's breach of contract counterclaim against Wellons.

To begin, the instructions and the verdict form were the subjects of multiple discussions among counsel and the Court, and a number of modifications were made as a result of those discussions. Counsel for defendants approved the verdict form in the form in which it was given to the jury.

Moreover, there was nothing materially wrong with the verdict form even in hindsight. Instruction No. 9 did instruct the jury on the elements of a breach of contract claim, and it might have been better practice to refer the jury to it as well as to Instruction No. 20 in the section of the verdict concerning Eagle Valley's counterclaim. But Instruction No. 20 specifically summarizes what Eagle Valley claims in its breach of contract counterclaim: that Eagle Valley was damaged by Wellons' defective work; that Wellons did not timely or fully complete the work required by the EPC Contract; and that to succeed on its breach of contract claim, Eagle Valley must prove that defective work or other failure to comply with requirements of the EPC Contract was a cause of damage sustained by Eagle Valley. This was a simple, plain and understandable summary of what Eagle Valley claimed to have been a breach by Wellons of the

EPC Contract. One must also recall that Instruction No. 1 instructed that the jury must consider all the general and specific instructions together.

At bottom, however, even if one viewed the reference back to Instruction No. 20 in the verdict form as incomplete, and even if one discounted Eagle Valley's approval of the verdict form, any error was harmless. The jury found that Eagle Valley, not Wellons, breached the EPC Contract. Applying Instruction No. 20, the jury necessarily found that Eagle Valley did not prove that "defective work or other failure (by Wellons) to comply with the requirements of the EPC Contract was a cause of damages sustained by Eagle Valley." It is irrational to speculate that an express reference back to Instruction No. 9 in addition to Instruction No. 20 in the verdict form could or would have made any difference at all in the outcome.

## ORDER

Having considered all of the defendants' arguments, the Court concludes that defendants have not identified any meritorious basis on which the Court should or would order a new trial on Eagle Valley's counterclaim. Therefore, the motion for a new trial, ECF No. 408, is DENIED.

DATED this 29th day of September, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge